UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DANIEL F. HAUSCHILD,

                                        Plaintiff,

                                                                    **OPINION & ORDER**
            - against -
                                                                    No. 13-CV-5211 (CS)
UNITED STATES MARSHALS SERVICE,

                                        Defendant.
-----------------------------------------------------------------------x

<u>Appearances:</u>
Thomas N. Ciantra
Kate M. Swearengen
Cohen, Weiss and Simon LLP
New York, New York
*Counsel for Plaintiff*

Brandon H. Cowart
Christine S. Poscablo
United States Attorney's Office
Southern District of New York
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before me is the motion for judgment on the pleadings of Defendant United States

Marshals Service ("USMS"), (Doc. 78), and Plaintiff Daniel F. Hauschild's motion for summary

judgment, (Doc. 73).

## I.      **BACKGROUND**

        For purposes of USMS's Motion to Dismiss, I accept as true the facts, but not the legal

conclusions, as set forth in Plaintiff's Complaint, (Doc. 1 ("Compl.")).  For purposes of

Plaintiff's Motion for Summary Judgment, my account of the underlying facts is drawn from the

administrative record, which USMS filed on April 10, 2015, and supplemented on June 2, 2017,

(Docs. 43, 58 (collectively, "Admin. R.")), not the parties' Local Civil Rule 56.1 Statements. *See Glara Fashion, Inc. v. Holder*, No. 11-CV-889, 2012 WL 352309, at *1 n.1 (S.D.N.Y. Feb. 3, 2012) (no Rule 56.1 Statement required in Administrative Procedure Act ("APA") case because court's decision is based on administrative record) (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law.")); *Student X v. N.Y.C. Dep't of Educ.*, No. 07-CV-2316, 2008 WL 4890440, at *11 (E.D.N.Y. Oct. 30, 2008) ("[T]he 56.1 Statement will not aid the court in its independent review of the [administrative] record.").

USMS bears a statutory obligation to provide security for the federal courts. 28 U.S.C. § 566(a). To fulfill that duty, USMS contracts with private security companies to supply court security officers ("CSO"s) to work in federal courthouses throughout the country. (*See, e.g.*, Compl. ¶ 10.)

From 1995 until October 2012, Plaintiff was employed by Akal Security, Inc. ("Akal"), a private security company, as a Lead CSO at the federal courthouse in Poughkeepsie, New York. (*Id.* ¶ 22.) During that time, Akal was party to a contract with USMS to provide CSOs to work at courthouses in the Second Circuit. (*Id.* ¶¶ 11, 12; Doc. 80 ("Cowart Decl.") Ex. 1 (the "Akal-USMS Contract").) The contract gave USMS exclusive control and discretion over which individuals would be permitted to work as CSOs. (Compl. ¶ 12.) Pursuant to the contract, USMS set forth CSO performance standards and had discretion to remove individuals who violated those standards. (*Id.* ¶¶ 12-13; Akal-USMS Contract § C-12.)

Plaintiff is a member and officer of United States Court Security Officers ("USCSO"), a labor organization and the exclusive collective bargaining representative for CSOs employed by

Akal in the Southern District of New York.  (Compl. ¶¶ 16, 23.)  USCSO and Akal were parties

to a collective bargaining agreement ("CBA"), which states that "[n]o employee, after

completion of his or her probation period, shall be disciplined or terminated without just cause,"

and provides grievance and arbitration procedures to resolve disputes.  (*Id.* ¶¶ 17, 18, 20; Cowart

Decl. Ex. 2 ("CBA") §§ 8.1, 9.3; CBA art. 10.)  Terminations resulting from USMS's removal of

CSOs from the Court Security Program are excepted from those procedures.  (Compl. ¶¶ 20-21;

*see* CBA § 8.1.)

In March 2012, USMS notified Akal that it had been informed by anonymous sources

that Plaintiff told a judge and CSOs at the Poughkeepsie courthouse that the courthouse in

Middletown, New York, had structural damage and would close, and that CSOs based there

would be laid off.  (Compl. ¶¶ 27-29; Admin. R. at D15.)  USMS believed that such conduct, if it

occurred, would constitute a violation of the performance standards for CSOs.  (Compl. ¶ 30;

Admin. R. at D15-16.)  Akal investigated the allegations, found them unsubstantiated, and

notified USMS that Plaintiff had not violated the performance standards and that Akal would not

discipline him.  (Compl. ¶¶ 33-36; Admin. R. at D172-74.)  USMS was unsatisfied with Akal's

report and demanded that Akal investigate the matter again.  (Compl. ¶ 37; Admin R. at D70-71.)

Akal conducted another investigation, again concluded that the allegations were unsubstantiated,

and recommended no discipline.  (Compl. ¶¶ 37-40; Admin R. at D3-14.)  USMS apparently

accepted this recommendation.  (*See* Compl. ¶ 40.)

In July 2012, USMS requested that Akal investigate eleven other incidents dating back to

2007 that involved Plaintiff and had been relayed to USMS in two anonymous letters and via

information provided by a named CSO, and indicated that the alleged actions could constitute

violations of several performance standards for CSOs.  (*Id.* ¶¶ 41, 43; Admin. R. at D489-91.)

Plaintiff was suspended on July 16, 2012. (Compl. ¶ 44; Admin. R. at D485-86, D488.) During the investigation, he was given an opportunity to provide oral and written statements in response to each allegation against him. (*See* Admin. R. at D305-06, D309, D312, D314-16, D318-19, D321, D324, D338-40.) Neither the Complaint nor the Administrative Record makes clear what information was provided to Plaintiff and when. But because Plaintiff's written statement dated July 25, 2012 outlines each allegation against him using language that is nearly identical to the language used in USMS's July 12, 2012 letter to Akal detailing the allegations against Plaintiff and requesting an investigation, (c*ompare id.* at D338-40, *with id.* at D489-90), it appears that Plaintiff was at least provided with that letter.

By correspondence dated September 27, 2012, Akal reported to USMS its finding that only one of the allegations was substantiated and recommended that Plaintiff be issued a time-served suspension and issued a final warning. (*See* Compl. ¶ 44; Admin. R. at D299-300.) USMS replied by letter on October 11, 2012, stating that it had reviewed "the data provided by the contractor's investigation, and the information provided by the Southern District of New York," and requesting that USMS remove Plaintiff immediately. (Admin. R. at D297.) By further correspondence dated October 12, 2012, USMS advised Akal that USMS did not agree with Akal's assessment, that Plaintiff had undermined USMS's trust and confidence in him, and that USMS had decided to remove Plaintiff from the CSO program immediately. (Compl. ¶ 45; Admin. R. at D294-95.) USMS further instructed Akal to ensure that Plaintiff had an opportunity to respond to its October 12 letter within fifteen days. (Compl. ¶ 45; Admin. R. at D294-95.) Neither letter from USMS identified which performance standards USMS found Plaintiff had violated or provided a statement of its findings or reasons for removing Plaintiff. (Compl. ¶ 45; *see* Admin. R. at D294-95, D297.)

Plaintiff asserts that Akal forwarded USMS's October 12 letter without providing the investigative report that Akal had prepared and given to USMS or Akal's September 27, 2012 letter to USMS concerning Akal's investigative findings and recommendation. (Compl. ¶ 46.) On October 24, 2012, within fifteen days of the USMS letter, Plaintiff responded to that letter, addressing each of the eleven anonymously alleged incidents and demanding that USMS tell him the bases for its decision and provide him with a hearing so he could present evidence and question his accusers. (*Id.* ¶¶ 46-47; Admin. R. at D284-91.) On November 16, 2012, USMS confirmed Plaintiff's removal in a letter to Akal, but did not respond to Plaintiff's arguments or his request for a hearing. (Compl. ¶ 48; Admin. R. at D277-78.) After receiving USMS's letter, Akal terminated Plaintiff. (*See* Compl. ¶ 1.)

Plaintiff filed this lawsuit on July 25, 2013, alleging claims against USMS under the APA, 5 U.S.C. § 500, *et seq.* (Compl. ¶¶ 49-62.) USMS answered on November 13, 2013, (Doc. 9), and moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) on February 3, 2015, (Doc. 36). Because USMS had already answered, I construed its motion as a motion for judgment on the pleadings under Rule 12(c), and granted that motion on August 28, 2015. *See Hauschild v. U.S. Marshals Serv.*, No. 13-CV-5211, 2015 WL 13203452 (S.D.N.Y. Aug. 28, 2015). I dismissed the clams against USMS for lack of subject matter jurisdiction based on my understanding that the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, precluded judicial review. *See id.* at *7-8. On November 3, 2015, the Second Circuit held that the Tucker Act did not preclude a former CSO in a factually analogous case from obtaining relief against USMS for a claim asserted under the APA. *See Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406-09 (2d Cir. 2015). In light of that ruling, on December 6, 2016, the Second Circuit vacated my dismissal of Plaintiff's APA claims against USMS and remanded this case for further

proceedings. *Hauschild v. U.S. Marshals Serv.*, 672 F. App'x 93, 95-96 (2d Cir. 2016) (summary order).

On February 17, 2017, a status conference was held during which it was agreed that USMS would file a second Rule 12(c) motion and Plaintiff would move for summary judgment. (*See* Minute Entry dated Feb. 17, 2017.) On October 13, 2017, the parties filed their bundled motion papers, including USMS's motion, (Doc. 78), memorandum of law, (Doc. 79 ("D's Mem.")), and declaration of counsel, (Doc. 80); Plaintiff's motion for summary judgment, (Doc. 73), memorandum of law in support of that motion and in opposition to USMS's motion, (Doc. 74 ("P's Mem.")), Rule 56.1 Statement, (Doc. 75), and declaration, (Doc. 76 ("Hauschild Decl.")); USMS's reply memorandum of law in further support of its Rule 12(c) motion and in opposition to Plaintiff's motion for summary judgment, (Doc. 81 ("D's Reply")), and Rule 56.1 Counterstatement, (Doc. 82); and Plaintiff's reply memorandum of law in further support of his motion for summary judgment, (Doc. 83 ("P's Reply")). On June 11, 2018, USMS filed a letter to inform the Court of a recent decision in *Atterbury v. U.S. Marshals Service*, in which the U.S. District Court for the Western District of New York considered similar claims against USMS and granted summary judgment in its favor. (Doc. 87.) Plaintiff responded by letter dated June 15, 2018. (Doc. 88.)

II. **LEGAL STANDARDS**

A. **Motion for Judgment on the Pleadings**

The standard for assessing a motion for judgment on the pleadings pursuant to Rule 12(c) based on failure to state a claim is the same as that for a Rule 12(b)(6) motion to dismiss. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *Accelecare*

*Wound Ctrs., Inc. v. Bank of N.Y.*, No. 08-CV-8351, 2009 WL 2460987, at *4 (S.D.N.Y. Aug. 11, 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

On a Rule 12(c) motion, the Court may ordinarily only consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). "A complaint is also deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks and alteration omitted). A document is "integral" if the complaint "relies heavily on its terms and effects." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

I find that the Akal-USMS Contract, attached to the declaration of USMS's counsel, (Cowart Decl. Ex. 1), and the 2010 CBA, attached to the declaration of USMS's counsel, (*id.* Ex. 2), and to the Plaintiff's declaration, (Hauschild Decl. Ex. B), are integral to the Complaint and incorporated by reference, and thus I may consider them. The 2007 CBA between Akal and the USCSO, which is attached to Plaintiff's Declaration, (*id.* Ex. A ("2007 CBA")), is neither incorporated by reference nor integral to the complaint, and is inappropriate for consideration on a Rule 12(c) motion. Likewise, to the extent Plaintiff's declaration contains factual assertions that touch on the merits of the action, the declaration cannot be considered in connection with USMS's Rule 12(c) motion. *See Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006) (collecting cases); *Colliton v. Bunt*, No. 15-CV-6580, 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (summary order).

"A Rule 12(c) motion for judgment on the pleadings based upon a lack of subject matter jurisdiction is treated as a Rule 12(b)(1) motion to dismiss the complaint." *Mac Pherson v. State St. Bank & Tr. Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006), *aff'd*, 273 F. App'x 61 (2d Cir.

2008) (summary order). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

The Court "may consider materials outside the pleadings, such as affidavits, documents and testimony" in considering a challenge to subject-matter jurisdiction. *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

### B. Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477

U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." *Id.* 56(e)(2), (3).

## III.  **DISCUSSION**

Section 702 of the APA provides a general waiver of the federal government's sovereign immunity where an individual seeks judicial review of agency action. *See* 5 U.S.C. § 702; *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003). Under § 706(2), a court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law," 5 U.S.C. § 706(2)(A), or "contrary to constitutional right, power, privilege, or immunity," *id.* § 706(2)(B). Plaintiff asserts that USMS's termination of his employment violated both § 706(2)(A) and § 706(2)(B). (*See e.g.*, Compl. ¶¶ 60-61.) I will address each claim in turn.

**A. APA § 706(2)(A) Claim**

Although "the APA embodies a 'basic presumption of judicial review,'" *Lunney*, 319 F.3d at 558 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)), § 701(a)(2) precludes such review if the "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2); *see Lunney*, 319 F.3d at 558. "This limitation on the APA's waiver of immunity means that there is no jurisdiction if the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney*, 319 F.3d at 558 (emphasis in original) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). The APA's "arbitrary and capricious" standard, *see* 5 U.S.C. § 706(2)(A), alone is insufficient "to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action." *Lunney*, 319 F.3d at 559 n.5 (quoting *Heckler*, 470 U.S. at 830); *see Schneider v. Feinberg*, 345 F.3d 135, 148 (2d Cir. 2003) (*per curiam*). "Therefore '§ 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based,' and requires dismissal when there is 'no law to apply.'" *Lunney*, 319 F.3d at 558 (citation omitted) (first quoting *Webster v. Doe*, 486 U.S. 592, 600 (1988); then quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)).

The powers and duties of USMS are set forth in 28 U.S.C. § 566, which states, in pertinent part, that USMS "retains final authority regarding security requirements for the judicial branch of the Federal Government." 28 U.S.C. § 566(i). The Director of USMS is required to "supervise and direct the [USMS] in the performance of its duties." *Id.* § 561(g); *see* 28 C.F.R. § 0.111. The Director is further "authorized to appoint . . . such employees as are necessary to carry out the powers and duties of the [USMS] and may designate such employees as law enforcement officers in accordance with such policies and procedures as the Director shall

establish pursuant to the applicable provisions of [the United States Code] and regulations issued thereunder." 28 U.S.C. § 561(f). Additionally, the regulations pertaining to USMS authorize the Director to deputize "[s]elected employees of private security companies in providing courtroom security for the Federal judiciary" "to perform the functions of a Deputy U.S. Marshal," 28 C.F.R. § 0.112(c), and require the Director to "direct and supervise all activities of the [USMS]," including the "[p]rovision of assistance in the protection of Federal property and buildings," *id.* § 0.111(f).

USMS argues that no statutory or regulatory authority limits its discretion to remove individuals from the Court Security Program and thus I must dismiss Plaintiff's non-constitutional challenge under § 706(2)(A) for lack of jurisdiction. (D's Mem. at 12-13.) Plaintiff does not dispute that the statutory and regulatory provisions that pertain to USMS's powers and duties (1) encompass removal decisions and (2) do not provide a meaningful standard against which to review USMS's decision to remove Plaintiff.[1] Instead, Plaintiff contends, citing *Perry v. Delaney*, 74 F. Supp. 2d 824, 833-34 (C.D. Ill. 1999), that § 701(a)(2) does not preclude review of the agency action challenged here, (P's Mem. at 22-23), and that the performance standards for CSOs in the USMS-Akal Contract "provide an ample benchmark to review whether a removal decision was . . . arbitrary," (*id.* at 23).

In *Perry*, the court rejected USMS's argument that judicial review of USMS's discretionary decision to remove CSOs was permitted under 5 U.S.C. § 702 only for statutory,

---

[1] Had Plaintiff argued that USMS lacked the authority to remove officers or that the pertinent statutory and regulatory provisions provide a meaningful standard against which to evaluate USMS's discretion in removing Plaintiff, I would have rejected those arguments. The discretion afforded to USMS is broad, *see, e.g.,* 28 U.S.C. § 566(i) ("The [USMS] retains final authority regarding security requirements for the judicial branch of the Federal Government."); *id.* §561(g) ("The Director shall supervise and direct the [USMS] in the performance of its duties."); 28 C.F.R. § 0.111 & (f) ("The Director . . . shall direct and supervise all activities of the [USMS] including . . . [the] [p]rovision of assistance in the protection of Federal property and buildings."), and fails to provide a meaningful standard against which to evaluate USMS's removal decision, *see Connors v. United States*, 863 F.3d 158, 161 (2d Cir. 2017) (*per curiam*).

not constitutional, claims. *See* 74 F. Supp. 2d at 832-34. It noted that "when Congress wishes to preclude judicial review of constitutional claims, it must express its intent to do so quite clearly," which it has not done. *Id.* at 834 (citing *Johnson v. Robinson*, 415 U.S. 361, 366 (1974)). But Plaintiff's "arbitrary and capricious" challenge under § 706(2)(A) is not a constitutional claim, and nothing in *Perry* addressed the existence (or not) of sufficient "law to apply."

Plaintiff's argument that USMS's performance standards for CSOs provide a meaningful standard against which to judge USMS's decision to remove Plaintiff is also without merit. In determining whether there is law to apply that establishes a meaningful standard for evaluating an agency's exercise of discretion, courts consider, among other things, the agency's regulations and informal guidance that govern the challenged action. *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016). Indeed, "[a]n agency's 'irrational departure' from its practice or policy can violate the APA." *Id.* at 81 (quoting *I.N.S. v. Yang*, 519 U.S. 26, 32 (1996)); *see Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 254-55 (S.D.N.Y. 2016) (collecting cases). But that practice or policy must govern the challenged *agency* action. *See Pearl River*, 214 F. Supp. 3d at 256-58. Here, the agency guidance upon which Plaintiff relies outlines performance standards with which *CSOs* must comply. (*See* Akal-USMS Contract § C-12(b).) Although the Akal-USMS Contract provides that a violation of these standards may result in removal, no provision of the performance standards outlines any process that USMS must follow or threshold it must meet in removing a CSO, or otherwise limits USMS's discretion in connection with removal decisions.[2] Given the absence of any "law to apply," Plaintiff's claim under § 706(2)(A) must be dismissed. *See Schneider*, 345 F.3d at 148-149.

---

[2] It would also be unrealistic to read the USMS-Akal Contract as restricting USMS discretion. That same agreement contains ample with language to the effect that USMS retains full discretion in deciding who can be a CSO. (*See, e.g.*, Doc. 38 Ex. 1 § H-3(a)-(c).)

**B. APA § 706(2)(B) Claim**

Although this Court lacks jurisdiction to determine whether the USMS's exercise of discretion was arbitrary or capricious, Plaintiff's constitutional challenge under § 706(2)(B) is subject to judicial review. *See Webster*, 486 U.S. at 603-04. To bring a claim for a procedural due process violation based on the termination of his employment, Plaintiff first must demonstrate a constitutionally protected property interest in his continued employment as a CSO. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Int'l Union, Sec., Police, & Fire Prof'ls of Am. (SPFPA) v. U.S. Marshal's Serv.*, 350 F. Supp. 2d 522, 534 (S.D.N.Y. 2004). To have a property interest, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). If a person has a constitutionally protected property interest, he cannot be deprived of that interest without due process. *Loudermill*, 470 U.S. at 538.

*1. Protected Property Interest*

Whether a plaintiff has a legitimate claim of entitlement to continued employment depends on the "terms of his [employment]," *Roth*, 408 U.S. at 578, and whether such terms preclude termination without cause, *see Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010). Where the employee works for a government contractor, a collective bargaining agreement between the employer-contractor and the union representing the employee is a term of employment for the purposes of the due process analysis, even though the government entity with which the employer contracted is not a party to that contract. *See Atterbury*, 805 F.3d at 407 (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002)); *Stein v. Bd. of City of N.Y., Bureau of Pupil Transp.*, 792 F.2d 13, 14, 17 (2d Cir. 1986); *SPFPA*, 350 F. Supp. 2d at 534.

In *Stein*, for example, a bus driver employed by a private company was discharged after the New York City Board of Education determined that he lacked "good moral character," which the contract between his private employer and the Board required him to have. 792 F.2d at 14-15. The Second Circuit concluded that the provision in the driver's contract with the private employer requiring "good cause" for termination, coupled with the Board's involvement in the driver's termination, created a constitutionally protected property interest in continued employment, *see id.* at 17, even though the contract between the Board and the private employer provided that an employee could not work under the contract if the Board's representative concluded that the employee fell below acceptable standards, *id.* at 14.

Here, the parties dispute whether, as in *Stein*, the just cause provision of the CBA between Akal and USCSO created a protected property interest in continued employment. Section 8.1 of the CBA, titled "Just Cause," states as follows:

> No employee, after completion of his or her probationary period, shall be disciplined or terminated without just cause. It is agreed by the parties that in instances where the employee is removed from working under the USMS[-Akal] Contract by the USMS, or when the employee's authority to work as a [CSO] under the USMS[-Akal] Contract is otherwise denied or terminated by the USMS, or the Employee no longer satisfies the USMS's qualifications for his or her position, the Employee may be terminated without recourse to the procedures under this Agreement and [Akal] shall be held harmless from any lawsuits resulting by the employee and the Union.

(CBA § 8.1.)

"The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of the agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "Principles of contract law naturally serve as useful guides in determining whether or not a constitutionally protected property interest exists." *Jago v. Van Caren*, 454 U.S. 14, 18

(1981). "Where the language of a contract is unambiguous, the parties' intent is discerned from the four corners of their agreement." *United States v. Barrow*, 400 F.3d 109, 117-18 (2d Cir. 2005) (internal quotation marks omitted).

USMS contends that "[i]t is clear from the contractual language that the 'just cause' provision of the first sentence of Section 8.1 does not apply in circumstances where an employee is disqualified from working as a CSO by the USMS," thereby demonstrating that Plaintiff did not possess a protected property interest in continued employment. (D's Mem. at 17.) While such a reading is understandable on first glance, it is not supported by the contractual language. In disputing this interpretation of the CBA, Plaintiff points out that the second sentence of the provision only prohibits Plaintiff from using the contractual grievance procedure outlined in the CBA to contest USMS's termination decision, but does not undermine the just cause requirement. (P's Mem. at 15.) Under this interpretation, an employee could not grieve his termination but could sue the employer for breach of contract under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[3]

The best argument that the sentence concerning removal by USMS modifies the just cause sentence is that it directly follows the just cause sentence and is located within the section titled "Just Cause." But the just cause provision is written without qualification, ending with a period, and the sentence that follows clearly excepts removal by USMS from the grievance procedures under the CBA but says nothing about just cause. Had Akal and USCSO intended to permit USMS to remove employees at will or to define removal by USMS as just cause, they

---

[3] Section 301(a) of the LMRA "is a source of substantive federal common law and provides a federal right of action." *Cephas v. MVM, Inc.*, 520 F.3d 480, 483-84 (D.C. Cir. 2008) (citations omitted). It states, in pertinent part, that "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , may be brought in any district court . . . without respect to the amount in controversy [and] without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Where, as here, an employee's breach-of-contract claim cannot be pursued through the grievance and arbitration provisions of the CBA, judicial enforcement of the contract is permitted. *See Cephas*, 520 F.3d at 485, 489-90.

could have said so by, for example, including language similar to that used in other CBAs between government contractors and unions. *See Strolberg v. U.S. Marshals Serv.*, 350 F. App'x 113, 114 (9th Cir. 2009) (CBA provided that "no Employee shall be dismissed or suspended without just cause, unless the company is directed by the U.S. government to remove the employee from working under the Employer's contract with the U.S. government, or if the Employee's credentials are denied or terminated by the U.S.M.S") (emphasis omitted) (unpublished); *Leitch v. MVM, Inc.*, No. 03-CV-4344, 2005 WL 331707, at *3 (E.D. Pa. Feb. 10, 2005) (CBA provided that "[a]fter completion of the probationary period, no employee shall be dismissed or suspended without just cause unless the employee is removed from working under [MVM's] contract with the Government based upon an oral or written request by the Government, or the employee's credentials are denied or terminated by the [USMS]") (alterations in original) (emphasis omitted); *SPFPA*, 350 F. Supp. 2d at 525 (CBA provided that "[a]fter completion of the probationary period, no Employee shall be dismissed or likewise disciplined without just cause, unless the Employee's credentials are denied or terminated by the Marshals Service").

USMS argues that even if the just cause provision could be construed to apply to removal dictated by USMS, and even if the employee could sue Akal for breach of contract under the LMRA despite lacking recourse to the grievance and arbitration procedures, any such lawsuit – and thus the just cause guarantee – would be a functional nullity in light of the final clause of § 8.1, which states that Akal "shall be held harmless from any lawsuits resulting by the employee and the Union." (CBA § 8.1.) In other words, USMS argues that Plaintiff has no property interest in his employment because he cannot grieve his termination, and any lawsuit he might file could not result in any relief. Any other interpretation, USMS argues, would read the "held

harmless" provision out of the CBA. (D's Reply at 11-12.) Plaintiff responds that the provision

protects Akal against liability for damages, but has no bearing on suits for reinstatement. (P's

Reply at 3.) I agree. To "hold harmless" means "[t]o absolve (another party) from any

responsibility for damage or other liability arising from the transaction," *Hold harmless*, Black's

Law Dictionary (10th ed. 2014), which is consistent with Plaintiff's interpretation that the "held

harmless" provision does not preclude the filing of a lawsuit or an award of equitable relief.[4]

      USMS's contention that other provisions of the CBA undermine Plaintiff's interpretation

of § 8.1 is also without merit. USMS argues that Article 5 of the CBA, titled "Government

Credentials Required," "provides that employees 'must be qualified to receive a Special

Deputation as a Court Security Officer[] . . . by the [USMS],' and those 'who fail to qualify will

be considered to have resigned voluntarily.'" (D's Mem. at 12 (quoting CBA art. 5).) But that

portion of the CBA pertains to maintaining government credentials, not disciplinary action, and

there is no indication that USMS pulled Plaintiff's deputation or that he was no longer qualified

for it. USMS also argues that § 2.5 undermines Plaintiff's interpretation of § 8.1. Because it is

undisputed that probationary employees may be terminated without just cause, (*id.* § 8.1), and

§ 2.5 of the CBA states that Akal "reserves the right to decide questions relating to . . . discharge

of Probationary Employees without recourse to the grievance procedure contained in [the CBA]"

– language that is analogous to the sentence in § 8.1 stating that an employee removed by USMS

"may be terminated without recourse to the procedures under [the CBA]" – USMS contends that

removal by USMS likewise does not require just cause. (*See* D's Mem. at 13.) But the opposite

conclusion is more logically drawn. Generally a court must construe a contract to give full

---

[4] In my prior decision in this case, I stated that, "without recourse to the grievance procedure, the just cause guarantee is a functional nullity." *Hauschild*, 2015 WL 13203452, at *6. After reviewing Plaintiff's submissions in connection with the instant motion, which include more developed arguments on this point than did Plaintiff's prior briefing, I conclude that my earlier interpretation of § 8.1 was incorrect.

meaning and effect to each provision. *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003). The existence of two separate provisions – one excepting probationary employees from the just cause provision and one excepting probationary employees from the grievance procedures under the CBA – suggests that the exceptions are distinct, and thus the absence of a provision clearly excepting removal by USMS from the just cause requirement applicable to non-probationary employees supports the interpretation that no such exception exists.

The court in *Atterbury v. U.S. Marshals Serv.*, No. 12-CV-502, 2018 WL 2100600 (W.D.N.Y. May 7, 2018), *appeal filed*, No. 18-1713 (2d Cir. June 7, 2018), recently assessed the same provisions of the same CBA in a factually analogous scenario and granted USMS's motion for summary judgment, concluding that the language of § 8.1, viewed in conjunction with the rest of the CBA and pertinent provisions of the USMS-Akal Contract, creates a hybrid employment contract such that the just cause requirement only applies when a CSO is disciplined or terminated by Akal, not by USMS. *See id.* at *8-12. In so holding, the court did not accord enough weight to the plain language of § 8.1 and overlooked the significance of the "held harmless" provision, which the court did not address. The court also relied too heavily on language in the USMS-Akal Contract. Although it is true that some of the contractual provisions indicate that USMS retains broad discretion to determine the suitability of CSOs, the Second Circuit in *Stein* held that the "good cause" provision of the employee's written contract with his private employer created a protected property interest in continued employment, notwithstanding a provision in the contract between the employer and the Board of Education requiring the employer to remove an employee whom the Board deemed to fall below acceptable standards. 792 F.2d at 14, 17.

Accordingly, I respectfully disagree with the court's conclusion in *Atterbury* – and USMS's contention – that the CBA unambiguously excepts removal by USMS from the provision providing that no CSO can be terminated without just cause. USMS's motion to dismiss Plaintiff's § 706(2)(B) claim is therefore denied.

Plaintiff also cross-moves for summary judgment on this issue, arguing that the CBA unambiguously states that Plaintiff could not be terminated without just cause and, alternatively, that even if the language is ambiguous, the collective bargaining history demonstrates that Plaintiff had such protection. (P's Mem. at 13-19.) "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere*, 232 F.3d at 157. "The question of whether the language of a contract is ambiguous is a question of law to be decided by the Court." *Id.* at 158. "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (internal quotation marks omitted). A court may, however, "resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." *Id.* (alteration and internal quotation marks omitted); *see Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65, 72 n.5 (2d Cir. 1999) (summary judgment in contract dispute may be granted "when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits the interpretation of the agreement as a matter of law") (internal quotation marks omitted).

I think the CBA is clear that, as discussed above, CSOs cannot be disciplined or terminated without just cause and that removal by USMS is not excepted from the just cause

requirement, thereby giving rise to Plaintiff's protected property interest in continued employment as a CSO. But even if I were to conclude that the language was ambiguous and look to the relevant extrinsic evidence – the prior CBA between Akal and USCSO – I would reach the same conclusion.[5]

The 2007 CBA provides, in pertinent part:

> After completion of the probationary period, . . . no Employee shall be dismissed or suspended without just cause. Just cause shall include any action or order of removal of an employee from working under the contract by the U.S. Government, or revocation or required CSO credentials by the USMS under the removal of Contractor employee provision in Section H-3 of the contract between the US Marshals Service and the Company.

(CBA 2007 § 6.1(A).) The second sentence, which is absent from the operative 2010 CBA, clearly defines removal by USMS as just cause. That this sentence subsequently was deleted is further evidence that the removal by USMS does not constitute just cause under the 2010 CBA, nor is termination arising from such removal excepted from the just cause requirement. USMS's only argument to the contrary is that the 2010 CBA provides no recourse for termination following removal by USMS, but in so arguing, it relies on its interpretation of the "without recourse" and "held harmless" provisions, which I have already rejected.

Because the 2010 CBA requires just cause for all terminations of non-probationary employees, Plaintiff had a property interest in continued employment and thus was entitled to due process of law before his employment could be terminated.[6]

---

[5] In my prior ruling, I granted the motion to dismiss of Patricia Hoffman, an officer of USMS whom Plaintiff sued, after concluding that Plaintiff failed to state a *Bivens* claim and, alternatively, that Hoffman was entitled to qualified immunity. *See Hauschild*, 2015 WL 13203452, at *3-7. In connection with the latter ruling, I concluded that it was "at least ambiguous" whether USMS could remove Plaintiff without cause. *Id.* at *7. As I mentioned in footnote 4, now having the benefit of Plaintiff's more developed arguments with respect to interpreting § 8.1 of the CBA, I no longer regard that provision as ambiguous. But I continue to believe that Hoffman is entitled to qualified immunity, because of the absence of clearly established law interpreting it.

[6] One could argue that it is unreasonable to saddle a Government agency with a just-cause requirement negotiated between a private contractor and its employees, especially where the contract between the private contractor and the

## 2. *Due Process*

Next, I must determine whether Plaintiff was provided with due process. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted); *see Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001); *see also Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) ("There is no rote formula for sufficient protections under the Due Process Clause."). "At a minimum, due process requires notice and a hearing[, but] . . . when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests . . . ." *Wilson*, 475 F.3d at 178 (citation omitted):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In situations involving a tenured public employee facing removal, the "employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before he is deprived of

---

Government is clear that the Government need not have just cause to disqualify an employee of the contractor. One could also argue that it is unreasonable for an employee to believe he has an entitlement to continued employment, notwithstanding the just-cause provision of the employer-union contract, where the employer-Government contract is to the contrary. But this result seems compelled by *Stein*, in which the good-cause provision in the CBA entitled the employee to continued employment even though the contract between the employer and the Board of Education required the employer to remove an employee that the Board found to fall below standards. 792 F.2d at 14-17. While the contract between the employer and the Board in *Stein* may not have had as much language regarding the Board's power to remove employees as the USMS-Akal contract here, the fact remains that the *Stein* Court found the employee was entitled to rely on a just-cause provision in his employment contract even where it contradicted the terms of the government-employer contract. As long as *Stein* remains good law — which it has been since 1986 — Government agencies are on notice that they may be bound by provisions in CBAs negotiated by their contractors. If such agencies wish to avoid outcomes like the one here, they may need to use their bargaining power to require, as part of their contracts with private employers, that those employers not enter into labor agreements that will undermine the Government's discretion.

a property interest in continued employment. *Loudermill*, 470 U.S. at 546; *accord Zynger v. Dep't of Homeland Sec.*, 370 F. App'x 253, 255 (2d Cir. 2010) (summary order).

Here, USMS referred the allegations it received to Akal for investigation. (Admin. R. D489-91.) During that investigation, Plaintiff was given an opportunity to provide oral and written statements in response to each allegation against him. (*See id.* at D305-06, D309, D312, D314-16, D318-19, D321, D324, D338-40.) Indeed, Plaintiff's written statement outlines each allegation against him using language that is nearly identical to the language used in USMS's July 12, 2012 letter to Akal requesting an investigation, (*compare id.* at D338-40, *with id.* at D489-90), thus suggesting that he was at least provided USMS's letter containing the allegations against him prior to his removal. When USMS directed that Plaintiff be removed from the Court Security Program on October 12, 2012, USMS instructed that Plaintiff be provided an opportunity to provide a written, post-termination response. (*Id.* at D294-95.) On October 24, 2012, Plaintiff provided a lengthy letter in response, again addressing each incident in which he was alleged to be involved as well as the performance standards USMS believed he may have violated. (*Id.* at D284-91.) The record does not indicate that Plaintiff was provided with Akal's investigation report, the information upon which the report was based, or any other information upon which USMS based its decision.

Plaintiff contends that this process was constitutionally deficient. Although he concedes that he was aware of the allegations that USMS instructed Akal to investigate, he argues that USMS did not explain the evidence against him, identify the reasons for its decision, or provide him with an opportunity to present his side of the case before he was removed from the Court Security Program, and that USMS further failed to provide Plaintiff with a full adversarial hearing after his termination, which Plaintiff argues is required under Second Circuit precedent.

(P's Mem. at 20-21.) USMS responds that Plaintiff's argument is belied by the facts, which demonstrate that Plaintiff was aware of the allegations against him and was given an opportunity to respond both before and after his termination, and that balancing the interests at stake weighs in favor of a determination that the process accorded to Plaintiff was sufficient. (D's Reply at 18-19.) USMS also contends that a full adversarial hearing was not required after Plaintiff's termination. (*Id.* at 19 n.10.)

As a preliminary matter, I agree with USMS that neither Supreme Court nor Second Circuit precedent dictates that a full adversarial hearing is necessarily required post-termination to comport with due process. Such a requirement would conflict with the Supreme Court's guidance in *Mathews*, 424 U.S. at 334, that due process protections are flexible and depend on the particular circumstances and interests at stake in each case. *See Int'l Union, United Gov't Officers of Am. v. Clark*, 706 F. Supp. 2d 59, 70 (D.D.C. 2010), *aff'd sub nom. Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25 (D.C. Cir. 2014). That "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial proceeding is provided afterwards," *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001), does not mean that this is the only set of procedural protections that comports with the requirements of due process. "There is no firm rule that termination procedures must be furnished at a specific time in order to be deemed [c]onstitutionally adequate." *Clark*, 706 F. Supp. 2d at 71; *see id.* at 70 n.8. Accordingly, to the extent Plaintiff argues that a full adversarial hearing was required after he was terminated, regardless of the amount or type of other process he was accorded, that argument is without merit.

Balancing the considerations set forth in *Mathews*, 424 U.S. at 335, I conclude that the parties both have significant interests at stake. Plaintiff has an interest in his continued employment and the prevention of disruption caused by his loss of income, while USMS must provide security to federal courthouses and those who work in and visit them, and is interested in the efficient removal of employees who are deemed unsatisfactory. *See Barkley*, 766 F.3d at 32; *Clark*, 706 F. Supp. 2d at 69-70. The remaining factor is the risk of error and the probative value, if any, of additional procedural safeguards – a factor that USMS does not adequately address. To contend that the balancing test set forth in *Mathews* comes down in its favor, USMS relies on a set of cases in which courts have held that notifying CSOs that they failed to meet medical qualifications and providing them with an opportunity to respond with documentation from their doctors regarding their medical status was sufficient, given the balance of the interests at stake and the low risk of error, as medical records provide a reliable way to prevent erroneous deprivations and to ensure the accuracy of the medical qualification process. (*See* D's Mem. at 17-19 (citing *Barkley*, 766 F.3d at 32-33; *Wilson*, 475 F.3d at 179; *Leitch*, 538 F. Supp. 2d at 897-98; *Clark*, 706 F. Supp. 2d at 70-71).) Here, however, the risk-of-error factor tilts in Plaintiff's favor, because there are concerns about witness credibility and reliability, and thus the potential value of a hearing in which Plaintiff can respond to the evidence against him and perhaps confront his accusers is substantially greater. *See Mathews*, 424 U.S. at 344-45; *Barkley*, 766 F.3d at 32; *Clark*, 706 F. Supp. 2d at 69-70; *see also Loudermill*, 470 U.S. at 552 (Brennan, J., concurring in part and dissenting in part) ("[W]here there exist not just plausible arguments to be made, but also substantial disputes in testimonial evidence, due process may well require more than a simple opportunity to argue or deny.") (internal quotation marks omitted). In weighing the risk of error against the parties' competing interests in this case, I

conclude that the process that USMS followed in removing Plaintiff was constitutionally deficient as a matter of law and must be set aside.[7]

## IV.    <u>CONCLUSION</u>

For the reasons stated above, USMS's motion, (Doc. 78), is GRANTED in part (as to Plaintiff's claim under 5 U.S.C. § 706(2)(A)) and DENIED in part (as to Plaintiff's claim under 5 U.S.C. § 706(2)(B)), and Plaintiff's motion, (Doc. 73), is GRANTED in part (as to Plaintiff's claim under 5 U.S.C. § 706(2)(B)) and DENIED in part (as to Plaintiff's claim under 5 U.S.C. § 706(2)(A)).  USMS's removal of Plaintiff is VACATED and the case is REMANDED back to USMS for further proceedings consistent with this decision.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 73, 78), and close the case.

**SO ORDERED.**

Dated: June 15, 2018
      White Plains, New York

_____
      CATHY SEIBEL, U.S.D.J.

---

[7] This is not to say that a full-blown evidentiary hearing is necessarily required.  It may turn out, once USMS provides an explanation of the evidence on which it relied, that its decision was based on facts that Plaintiff does not dispute.  If the termination decision did not involve the resolution of factual disputes, a hearing would serve no purpose.  The Court cannot tell from the administrative record as it exists so far, however, what conduct on Plaintiff's part caused USMS to determine that he should no longer serve as a CSO, or what evidence it relied on in concluding that that conduct had occurred.